## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  19-cv-2451

PATENTBOOKS, INC., a Delaware Corporation,

     Plaintiff,

v.

DR. DORNE SOWERBY, an individual;
and DOES 1-10, INCLUSIVE,

     Defendants.

---

## COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, UNJUST ENRICHMENT, AND AN ACCOUNTING

## JURY TRIAL DEMANDED

---

Plaintiff PatentBooks, Inc. ("PBI" or "Plaintiff") alleges as follows against Defendant Dorne Sowerby ("Sowerby" or "Defendant"):

## INTRODUCTION

1.     In 2017, Sowerby, GIF (though Worth) and PBI entered into an agreement under which PBI deposited $330,000 USD in a United States escrow account at Citi Bank, N.A. ("Escrow Agreement").  The parties agreed that a New York attorney, Etra, would act as escrow agent. The funds were expressly placed in the account to demonstrate financial solvency so that a company created by Sowerby and Worth, General Innovation Fund ("GIF"), could secure from BBVA bank in Spain a loan for venture capital funds.  In separate agreements, GIF, through Sowerby and Worth, agreed to use the funds for a substantial equity investment (exceeding $100 million) in PBI.

2.     Over the next year, Sowerby and Worth repeatedly assured PBI that the funds for investment in PBI would be secured—at one point, falsely representing that BBVA bank had approved the transaction and the funds would be received within weeks.  Over time, Sowerby and Worth began changing their story as to why the escrow funds had not been returned and why no funds for investing in PBI had been made.  Finally, Sowerby and Worth confessed that BBVA had refused to lend the funds for investing in PBI and that GIF was exploring other options to secure funding.  With the lending contract in material breach, PBI terminated the investment contract with GIF and the escrow agreement, and demanded that Sowerby and Worth return PBI's $330,000 in the escrow account.  Sowerby and Worth have refused to return the escrow funds to PBI, and Etra has refused to make an accounting to PBI showing that the $330,000 remains in the escrow account.  More recently, Etra has confirmed that Dorne illegally removed the $330,000 from the escrow account, without PBI's permission, and has used the funds for her own financial benefit.

**PARTIES**

3.      PBI is a corporation organized under the laws of the State of Delaware with its principal place of business in Colorado Springs, Colorado.

4.      Sowerby is an individual and maintains places of residence in both the United Kingdom and United States.

5.      This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 (diversity of citizenship) in that the matter in controversy exceeds $75,000 and is between citizens of different States and citizens of a State and a foreign state.

6.      Venue is proper in the United States District Court for the District of Colorado pursuant to the parties' contract and 28 U.S.C. §§ 1391(b)(1) and 1391(b)(3).

7.      On December 2, 2017, PBI, GIF (through Worth), and Sowerby entered into an Escrow Agreement under which PBI agreed to deposit three hundred seventy-three thousand, nine hundred fifty euro (€373,950) into a designed escrow account to be held in trust and distributed or released only in accordance with the express terms of the Escrow Agreement.  Under those terms, the escrow funds were to be used solely in connection with certain bank and transaction-related fees and costs incurred by GIF for the funding of a separate Purchase Agreement, pursuant to which GIF would secure funds from BBVA bank and use those funds to purchase PBI stock (up to $100,000,000).  The parties further agreed that the deposited funds could not be used for any other purpose and were not to be removed without prior written consent from PBI.  Likewise, the parties agreed that the trustees could not be changed without PBI's written approval.  *See* Exhibit 1, Recitals and ¶¶ 1-5.

8.      For any disputes arising under the Escrow Agreement, the Escrow Agreement provided that each party irrevocably submit to the exclusive jurisdiction of federal courts of the United States or the courts of the State of Delaware in the City of Dover, and that service of process, summons, notice or other document by mail to the

party's address shall be effective service of process for any suit, action or proceeding in such courts.  The parties further agreed to waive any objections to venue or forum.  *Id.*, ¶ 15.

9.      On January 16, 2018, PBI, GIF (through Worth), and Sowerby entered into a First Amended Escrow Agreement ("FAEA") under which the parties agreed that the Escrow Account would be established at CitiBank, N.A., and that the escrow amount would be restated as Three Hundred Fifty Thousand Euro (€350,000).  *See* Exhibit 2 at ¶¶ 1-2.

10.     Through subsequent email communications, the parties agreed that PBI would deposit Three Hundred Thirty Thousand U.S. dollars ($330,000) into a CitiBank, N.A. account, designated as a New York Interest on Lawyer Trust Account ("IOLA") maintained by Aaron Etra, Esq. at 445 Part Avenue, 9th Floor, New York, NY.  The Account name was listed as "Aaron Etra, Esq. IOLA Account."  *See* Exhibit 3.  The remainder of the €350,000 was to be deposited into other escrow accounts in Europe directly by other investors.

11.     Between January 4, 2018 and March 5, 2018, PBI deposited the full $330,000 into the Aaron Etra, Esq. IOLA Account.

12.     Despite repeated assurances that BBVA bank had funded GIF for investment in PBI, and that GIF would be purchasing PBI stock within days or weeks, by June or July 2018 it became clear that the transaction was in jeopardy.  Sowerby and Worth began offering different, and sometimes conflicting, excuses for the delay.  In or about October 2018, Sowerby and Worth admitted that BBVA had declined to fund GIF and that Sowerby and Worth were pursuing other sources of funding for the GIF's promised purchase of PBI stock.  PBI repeatedly demanded that Sowerby and Worth provide verifiable evidence that (1) the escrow funds remain secured in a legitimate account and were liquid and available as contractually required, and (2) progress was being made toward securing the capital funds for investment in PBI.  While Sowerby

and Worth repeatedly promised to provide the evidence-based assurances, neither the requested information nor the promised investment in PBI was ever made.

13.     Accordingly, on January 31, 2019, PBI wrote Sowerby and Worth terminating and rescinding the Escrow Agreement, as amended, and demanded that PBI's $330,000 deposit into the Aaron Etra ILOA Account be returned on or before February 13, 2019.  *See* Exhibit 4.

14.     Sowerby and Worth have refused and continue to fail and refuse to return the Escrow funds or to even provide an accounting to show that the deposited funds remain in escrow.  Further, even though Etra has been notified that the Escrow Agreements have been terminated, he refuses to either return PBI's $330,000 or to provide evidence that the funds remain in escrow.

15.     More recently, PBI learned why Etra had not returned the $330,000 from escrow to PBI.  Etra has admitted that Dorne illegally removed the $300,000 from the escrow account, without PBI's written consent, and has used the funds for her own benefit—also in violation of the parties' written escrow agreement.

16.     These actions have caused PBI significant harm.  Besides the $330,000 in escrow, PBI has been unable to secure other funding or loans based on the belief that GIF will be making a significant investment.  Without either the promised investment or the return of PBI's escrowed funds, PBI has been unable to enter the market for over a year—causing damages that exceed many millions of dollars.

**FIRST CAUSE OF ACTION**
**(Breach of Escrow Agreement)**
**(By Plaintiff As to Defendant Sowerby)**

17.     Plaintiff realleges and incorporates by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

18.     PBI, GIF (through Worth) and Sowerby entered into a written Escrow Agreement and an Amendment to the Escrow Agreement.

19.     PBI performed all obligations under the Escrow Agreement, as amended, including the deposit of $330,000 into the Aaron Etra, Esq. IOLA Account.

20.     Sowerby breached the Escrow Agreement by failing to use the Escrowed funds to secure from BBVA bank funding for GIF, and failing to make a stock purchase investment in PBI from GIF funding.

21.     PBI demanded performance under the agreement to make a stock purchase investment in PBI or, alternatively, to cancel the Escrow Agreement and return the $330,000 deposited funds to PBI.  Sowerby has refused and continue to refuse both demands.

22.     PBI terminated the Escrow Agreement and related contracts with Sowerby, Worth, and GIF, and demanded return the $330,000 deposited funds to PBI. Sowerby has refused and continue to refuse PBI's demand to return the Escrow deposit.

23.     Sowerby, without PBI's prior written consent, instead removed the $330,000 deposited funds from the escrow account and has used the funds for her own benefit.

24.     As a result of Sowerby's breach of the Escrow Agreement, as amended, PBI has incurred and continues to incur damages in the form of the deposited amount, interest on the deposited amount, and inability to secure other investors in PBI, or to enter the market.

### SECOND CAUSE OF ACTION
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**
**(By Plaintiff As to Defendant Sowerby)**

25.     Plaintiff realleges and incorporates by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

26.     PBI, GIF (through Worth) and Sowerby entered into a written Escrow Agreement and an Amendment to the Escrow Agreement.  The Escrow Agreement, as amended, contains an implied covenant of good faith and fair dealing.

27.     PBI performed all obligations under the Escrow Agreement, as amended, including the deposit of $330,000 into the Aaron Etra, Esq. IOLA Account.

28.     Sowerby breached the Escrow Agreement by failing to use the Escrowed funds to secure from BBVA bank funding for GIF, and failing to make a stock purchase investment in PBI from GIF funding.  Sowerby's breaches interfered with PBI's right to receive the benefit of the $330,000 deposited into the Aaron Etra, Esq. IOLA Account.

29.     PBI demanded performance under the agreement to make a stock purchase investment in PBI or, alternatively, to cancel the Escrow Agreement and return the $330,000 deposited funds to PBI.  Defendants Worth and Sowerby have refused and continue to refuse both demands.

30.     PBI terminated the Escrow Agreement and related contracts, and demanded return the $330,000 deposited funds to PBI.  Sowerby has refused and continue to refuse PBI's demand to return the Escrow deposit.

31.     Sowerby, without PBI's prior written consent, instead removed the $330,000 deposited funds from the escrow account and has used the funds for her own benefit.

32.     As a result of Sowerby's breach of the implied covenant of good faith and fair dealing, PBI has incurred and continue to incur damages in the form of the deposited amount, interest on the deposited amount, and inability to secure other investors in PBI or to enter the market.

### THIRD CAUSE OF ACTION
**(Unjust Enrichment)**
**(By Plaintiff As to Defendant Sowerby)**

33.     Plaintiff realleges and incorporates by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

34.     PBI, GIF (through Worth) and Sowerby entered into a written Escrow Agreement and an Amendment to the Escrow Agreement.

35.     PBI performed all obligations under the Escrow Agreement, as amended, including the deposit of $330,000 into the Aaron Etra, Esq. IOLA Account.

36.     GIF (through Worth) and Sowerby received the benefit of PBI's performance of the obligations under the Escrow Agreement, as amended.

37.     PBI incurred $330,000 in expenses to comply with the terms of the Escrow Agreement.  PBI has incurred further expenses by foregoing other investment opportunities by placing the $330,000 into the escrow account.

38.     Defendant Sowerby has retained the benefit of PBI's performance without performing her obligations under the agreements with PBI, and under these circumstances, Sowerby would be unjustly enriched if allowed to retain the benefit of the deposited funds without commensurate compensation.

### FOURTH CAUSE OF ACTION
**(Breach of Fiduciary Duty)**
**(By Plaintiff As to Defendant Sowerby)**

39.     Plaintiff realleges and incorporates by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

40.     PBI, GIF (through Worth) and Sowerby Entered into a written Escrow Agreement and an Amendment to the Escrow Agreement.

41.     PBI performed all obligations under the Escrow Agreement, as amended, including the deposit of $330,000 into the Aaron Etra, Esq. IOLA Account.

42.     Under the parties' escrow agreement, Sowerby agreed to act as escrow agent, creating a trust based relationship concerning the subject matter of the Escrow account and the deposited funds.

43.     As trustee of the Aaron Etra, Esq. IOLA Account, Etra had a trust based relationship concerning the subject matter of the Escrow account and the deposited funds.

44.     As trustee, Sowerby and Etra a duty to act with the utmost good faith in the best interests of PBI as to the deposited funds.

45.     Sowerby, with Etra's permission, removed the $330,000 from the Aaron Etra, Esq. IOLA Account without seeking the prior written consent of PBI, and then both concealed the removal from PBI.  In fact, both Sowerby and Etra repeatedly suggested and assured that the deposited funds remained secure in the Aaron Etra, Esq. IOLA Account.  By removing and allowing the removal of the deposited funds from the Aaron Etra, Esq. IOLA Account, and using the funds for Sowerby's own self-interest, Defendant knowingly and intentionally acted against PBI's interest, and in Defendant's own self-interest, in a manner that caused harm to PBI and in a matter that was a substantial factor in PBI's harm.

### FIFTH CAUSE OF ACTION
#### (An Accounting)
#### (By Plaintiff As to Defendant Sowerby)

46.     Plaintiff realleges and incorporates by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

47.     PBI, GIF (through Worth) and Sowerby Entered into a written Escrow Agreement and an Amendment to the Escrow Agreement.

48.     PBI performed all obligations under the Escrow Agreement, as amended, including the deposit of $330,000 into the Aaron Etra, Esq. IOLA Account.

49.     Under the parties' escrow agreement, Sowerby agreed to act as escrow agent, creating a trust based relationship concerning the subject matter of the Escrow account and the deposited funds.

50.     As trustee of the Aaron Etra, Esq. IOLA Account, Etra had a trust based relationship concerning the subject matter of the Escrow account and the deposited funds.

51.     As the depositing party, PBI is entitled to an accounting from Sowerby as to the status of PBI's $330,000, when the funds were removed from the Aaron Etra, Esq. IOLA Account were unlawfully removed, who authorized the unlawful removal of the funds, and the current location of the funds.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

### First Cause of Action for Breach of Contract

1.     For damages in an amount to be proven at trial.

2.     For specific performance in the return of the $330,000 originally deposited in the Aaron Etra, Esq. IOLA Account.

3.     For a judicial declaration that the Escrow Agreement, as amended, has been terminated.

### Second Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing

1.     For damages in an amount to be proven at trial.

2.     For specific performance in the return of the $330,000 originally deposited in the Aaron Etra, Esq. IOLA Account.

3.     For a judicial declaration that the Escrow Agreement, as amended, has been terminated.

### Third Cause of Action for Breach of Contract

1.     For damages in an amount to be proven at trial.

### Fourth Cause of Action for Breach of Fiduciary Duty

1.      For damages in an amount to be proven at trial.

2.      For punitive damages in the amount of $3,300,000, or other amount sufficient to punish Defendant for the unlawful acts described herein.

### Fifth Cause of Action for an Accounting

1.      An accounting to determine the location of whether PBI's $330,000 remains in the Aaron Etra, Esq. IOLA Account.

### For All Causes of Action

1.      For attorneys' fees as and if applicable;

2.      For costs of suit;

3.      For prejudgment interest; and

4.      For such other and further relief as the Court deems proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial in this matter.


Dated:  August 28, 2019

*/s/Lawrence M. Hadley*
Lawrence M. Hadley – CA State Bar No. 157728
(Admitted U.S. District Court for District of Colorado)
GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
lhadley@glaserweil.com
Telephone:  (310) 553-3000
*Attorneys for Plaintiff PatentBooks, Inc.*

# Exhibit 1

## ESCROW AGREEMENT

THIS ESCROW AGREEMENT (this **"Agreement"**), is made and entered into as of 2nd December, 2017, by and among General Innovation Fund (the **"GIF"**), PatentBooks, Inc., a Delaware corporation (the **"PBI"**), and Dr. Dorne Sowerby [DS], as escrow agent (the **"Escrow Agent"**).

WHEREAS, GIF and PBI have entered into a certain Heads of Terms (the "**Heads of Terms**") and will enter into a Purchase Agreement (the **"Purchase Agreement"**), pursuant to which GIF will provide funding and purchase stock in PBI;

WHEREAS, the Heads of Terms provides that PBI is to advance certain amounts prior to the Closing; and

WHEREAS, the execution and delivery of this Agreement is a condition of the parties' obligations under the Heads of Terms;

NOW, THEREFORE, in consideration of the foregoing and the mutual and dependent covenants hereinafter set forth, the parties agree as follows:

**1.** **Defined Terms**. All capitalized terms used in this Agreement but not otherwise defined herein are given the meanings set forth in the Heads of Terms.

**2.** **Escrow Deposit**. Subsequent to the execution and delivery of this Agreement, Three Hundred Seventy-Three Thousand Nine Hundred and Fifty Euro (€373,950.00) (the **"Escrow Amount"**) will be deposited, by wire transfer of available funds, with the Escrow Agent by PBI. The Escrow Amount, together with all interest, dividends, income, capital gains and other amounts earned thereon or derived therefrom (**"Escrow Income"**) (collectively with the Escrow Amount, the **"Escrow Funds"**), will be made available for the payment of any fees and costs of funding as stated in the Heads of Terms. The Escrow Agent hereby acknowledges receipt of such funds and agrees to hold the Escrow Amount in a separate and distinct account, in the name of Escrow Agent for PBI and GIF (the **"Escrow Account"**), subject to the terms and conditions of this Agreement. The Escrow Funds shall be held in trust and shall not be subject to any lien, attachment, trustee process or any other judicial process of any creditor of any party hereto. The Escrow Agent shall not distribute or release the Escrow Funds except in accordance with the express terms and conditions of this Agreement.

**3.** **Release of Escrow Funds**. The Escrow Funds held pursuant to this Agreement are intended to provide for certain bank and transaction-related fees and costs incurred by GIF in connection with the funding in accordance with Section 8 under the Heads of Terms, and PBI wire transfers the Escrow Amount. GIF will not wire transfer the Escrow Amount to the issuing bank's bank account until GIF receives an executed copy of a Refund Agreement. The Refund Agreement is a document between the issuing bank and GIF whereby the issuing bank guarantees to refund the Escrow Amount without conditions. The Refund Agreement will clearly indicate that there are no offsets or adjustments to the Escrow Amount.

**4.** **Termination**. This Agreement shall terminate when the entire Escrow Account has been distributed in accordance with Section 3 of this Agreement.

**5.** **Conditions to Escrow.** The Escrow Agent agrees to hold the Escrow Funds in the Escrow Account and to perform in accordance with the terms and provisions of this Agreement. PBI and GIF agree that the Escrow Agent does not assume any responsibility for the failure of PBI or GIF to perform in accordance with the Purchase Agreement or this Agreement. The acceptance by the Escrow Agent of its responsibilities hereunder is subject to the following terms and conditions, which the parties hereto agree shall govern and control with respect to the Escrow Agent's rights, duties, liabilities and immunities:

(a) The Escrow Agent shall have only those duties as are specifically provided herein, which shall be deemed purely ministerial in nature, and shall under no circumstance be deemed a fiduciary for any of the other parties to this Agreement. The Escrow Agent shall not be required to take any action hereunder involving any expense unless the payment of such expense is made or provided for in a manner reasonably satisfactory to it.

(b) The Escrow Agent shall be protected in acting upon any written notice, consent, receipt or other paper or document furnished to it, not only as to its due execution and validity and effectiveness of its provisions, but also as to the truth and accuracy of any information therein contained, which the Escrow Agent in good faith believes to be genuine and what it



purports to be. Should it be necessary for the Escrow Agent to act upon any instructions, directions, documents or instruments issued or signed by or on behalf of any corporation, fiduciary or individual acting on behalf of another party hereto, which the Escrow Agent in good faith believes to be genuine, it shall not be necessary for the Escrow Agent to inquire into such corporation's, fiduciary's or individual's authority.

(c)     The Escrow Agent shall not be liable for any error of judgment or for any act done or step taken or omitted by it in good faith, or for anything which it may do or refrain from doing in connection herewith, except for its own gross negligence or willful misconduct.

(d)     The Escrow Agent may consult with, and obtain advice from, legal counsel in the event of any question as to any of the provisions hereof or the duties hereunder, and it shall incur no liability and shall be fully protected in acting in good faith in accordance with the opinion and instructions of such counsel.

(e)     The Escrow Agent shall neither be responsible for, nor chargeable with, knowledge of, the terms and conditions of any other agreement, instrument or document between the other parties hereto, including, without limitation, the Purchase Agreement. This Agreement sets forth all matters pertinent to the escrow contemplated hereunder, and no additional obligations of the Escrow Agent shall be inferred from the terms of this Agreement or any other agreement, instrument or document.

(f)     In the event that the Escrow Agent shall be uncertain as to its duties or rights hereunder or shall receive instructions, claims or demands from GIF or PBI which, in its opinion, conflict with any of the provisions of this Agreement, it shall be entitled to refrain from taking any action and its sole obligation shall be to keep safely all property held in escrow until it shall be directed otherwise in writing jointly by GIF and PBI or by a final and non-appealable order of a court of competent jurisdiction. The Escrow Agent shall have the option, after 5 days' notice to GIF and PBI of its intention to do so, to file an action in interpleader requiring GIF and PBI to answer and litigate any claims and rights among themselves.

(g)     Any corporation or association into which the Escrow Agent may be converted or merged, or with which it may be consolidated, or to which it may sell or transfer its escrow business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation or transfer to which it is a party, shall be and become the successor escrow agent hereunder and vested with all of the title to the whole property or trust estate and all of the trusts, powers, immunities, privileges, protections and all other matters as was its predecessor, without the execution or filing of any instrument or any further act, deed or conveyance on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

6.     **Resignation and Removal of Escrow Agent**.

(a)     The Escrow Agent reserves the right to resign at any time by giving 5 days written notice of resignation, specifying the effective date thereof. On the effective date of such resignation, the Escrow Agent shall deliver this Agreement together with the Escrow Funds (including any Escrow Income earned thereon) and any and all related instruments or documents to any successor escrow agent agreeable to GIF and PBI. If a successor escrow agent has not been appointed and has not accepted such appointment prior to the expiration of 5 days following the date of the notice of such resignation, the Escrow Agent may, but shall not be obligated to, apply to a court of competent jurisdiction for the appointment of a successor Escrow Agent. Any such resulting appointing shall be binding upon all of the parties to this Agreement. Notwithstanding anything to the contrary in the foregoing, the Escrow Agent or any successor escrow agent shall continue to act as Escrow Agent until a successor is appointed and qualified to act as Escrow Agent.

(b)     The Escrow Agent may be removed (with or without cause) and a new escrow agent may be appointed upon mutual agreement of GIF and PBI. In such event, GIF and PBI shall deliver joint written notice to the Escrow Agent of such removal together with joint written instructions authorizing delivery of this Agreement together with the Escrow Funds (including any Escrow Income earned thereon) and any and all related instruments or documents to a successor escrow agent.

(c)     Upon delivery of the Escrow Funds to a successor escrow agent in accordance with this Section 6, the Escrow Agent shall thereafter be discharged from any further obligations hereunder. All power, authority, duties and obligations of the Escrow Agent shall apply to any successor escrow agent.

7.     **Indemnification of Escrow Agent**. GIF and PBI shall jointly and severally indemnify and hold the Escrow Agent harmless from and against any liability, loss, damage or expense (including, without limitation, reasonable and documented attorneys' fees) that the Escrow Agent may incur in connection with this Agreement and its performance hereunder or in connection herewith, except to the extent such liability, loss, damage or expense arises from its willful misconduct or gross negligence. The indemnification provided for under this Section 7 shall survive the termination of this Agreement and the resignation or removal of the Escrow Agent.

8.     **Notices**. All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the addresses indicated below (or at such other address for a party as shall be specified in a notice given in accordance with this Section 8. Notwithstanding the above, in the case of communications delivered to the Escrow Agent whereby the Escrow Agent must act based on a specified number of days upon its receipt of such communication, if applicable, such communications shall be deemed to have been given on the date received by an officer of the Escrow Agent or any employee of the Escrow Agent who reports directly to any such officer at the above-referenced office.

| | |
|---|---|
| If to PBI: | PatentBooks Inc. |
| | 4308 Ridgelane Drive |
| | Colorado Springs, Colorado 80918 USA |
| | |
| | Email:art.nutter@patentbooksinc.com |
| | Attention: Art Nutter, Chairman and CEO |
| | |
| If to GIF: | GIF, c/o Nigel Worth |
| | Facsimile: efax |
| | E-mail: nigelworth@btinternet.com |
| | Attention: GIF |
| | |
| If to Escrow Agent: | Commodities Partners |
| | CO3 Chemin de la Source |
| | Signy 1274 |
| | Vaud |
| | Switzerland |
| | E-mail: domesowerby@gmail.com |
| | Attention: Agent |

9.     **Entire Agreement**. This Agreement, together with the Purchase Agreement and related exhibits and schedules, constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter. Notwithstanding the foregoing, in the event of any inconsistency between the statements in the body of this Agreement and those of the Purchase Agreement, (i) with respect to any inconsistency as between GIF and PBI, the statements in the body of the Purchase Agreement shall control; and (ii) with respect to any inconsistency as between the



Escrow Agent, on the one hand, and either GIF or PBI or both, on the other hand, the statements in the body of this Agreement shall control.

10.   **Successor and Assigns**. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. No party may assign any of its rights or obligations hereunder without the prior written consent of the other parties hereto, which consent shall not be unreasonably withheld or delayed; **PROVIDED**, however, GIF may, without the prior written consent of the other parties hereto, assign its rights under this Agreement as collateral security to its lenders. No assignment shall relieve the assigning party of any of its obligations hereunder.

11.   **No Third-Party Beneficiaries**. This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

12.   **Headings**. The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

13.   **Amendment and Modification; Waiver**. This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. Except as otherwise set forth in this Agreement, no failure to exercise, or delay in exercising, any rights, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

14.   **Severability**. If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

15.   **Governing Law; Submission to Jurisdiction**. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction). Any legal suit, action or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby may be instituted in the federal courts of the United States or the courts of the State of Delaware in each case located in the city of Dover, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding. Service of process, summons, notice or other document by mail to such party's address set forth herein shall be effective service of process for any suit, action or other proceeding brought in any such court. The parties irrevocably and unconditionally waive any objection to the laying of venue of any suit, action or any proceeding in such courts and irrevocably waive and agree not to plead or claim in any such court that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

16.   **Counterparts**. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.



IN WITNESS WHEREOF, the parties hereto have executed this Escrow Agreement on the date first written above.

Signed by THE ESCROW AGENT

..................................................................

Duly Authorized Officer as Agent for the Funds

Name...Dr. Dorne Sowerby...................................................

Position: Agent

Signed by PatentBooks Inc.

Duly Authorized Officer of the Company

Name...........................................

Position: Chairman and Chief Executive Officer

# Exhibit 2

## FIRST AMENDMENT TO ESCROW AGREEMENT

This is the first amendment ("First Amendment") to the Escrow Agreement (the "Agreement") made as of January 16, 2018, ("Execution Date") among The General Innovation Fund ("Fund"), PatentBooks, Inc. ("Company"), and Dr. Dorne Sowerby ("Escrow Agent") (individually, a "Party"; collectively, the "Parties").

**WHEREAS**, the Parties entered into the Agreement on November 24, 2017 whereby the Company would deposit a certain fee into escrow in connection with a proposed Contract of Investment whereby the Fund would provide funding to the Company;

**WHEREAS**, the Parties desire to amend the Agreement with this First Amendment in order to modify the certain terms of the Agreement (collectively incorporated and referred to as the "First Amended Agreement"); and

**WHEREAS**, the Parties acknowledge receipt of fair and equitable consideration in entering into this First Amendment, incorporated with the Agreement as the First Amended Agreement.

**NOW THEREFORE**, in consideration of the mutual covenants, agreements, representations, and warranties contained in this First Amendment, which is hereby incorporated into and with the Agreement to be collectively referred to as the First Amended Agreement, the Parties agree as follows:

1. **Escrow Account**.  The Escrow Agent was to deposit funds with a bank to setup the Escrow Account and the Parties wish to identify and agree that Citi Bank, N.A. will be the banking institution used for the establishment of the Escrow Account.

2. **Escrow Amount**.  Paragraph 2 of the Agreement defined the "Escrow Amount" as Three Hundred Seventy-Three Thousand Nine Hundred and Fifty Euro (€373,950).  The Parties wish to amend and restate the definition of the "Escrow Amount" in the Agreement to Three Hundred Fifty Thousand Euro (€350,000) (the "Escrow Amount").

3. **Conversion Rate**.  For purposes of calculating whether the Company has fully deposited the Escrow Amount, the US Dollars deposited by the Company shall be converted into Euros at the agreed upon rate of One and twenthfith-Hundredths Euros (€1.25) to One United States Dollar (US$1.00) or the rate on day of wire transfer if the rate is lower than €1.25.

4. **Miscellaneous**.

(a) **Definitions and Construction**.  As used herein, all defined terms shall have the meaning ascribed to them in the Agreement unless specifically defined otherwise in this First Amendment. In case of conflict, the terms of this First Amendment shall supersede the terms of the Agreement.  Section or article references in this First Amendment refer to sections or articles of the Agreement.

(b) **Merger, Entire Agreement.**  This First Amendment is incorporated into the Agreement and governed by all terms of the Agreement provided they do not conflict with this First Amendment, in which case the terms of this First Amendment shall control and be operative.  This First Amendment and the Agreement and all Exhibits or Addenda attached thereto constitute the entire agreement between the parties pertaining to the subject matter contained in it and supersede all prior and contemporaneous agreements, representations, and understandings of the parties. No supplement, modification, or amendment of the Agreement or First Amended Agreement will be binding unless executed in writing by all the parties. No waiver of any of the provisions of the Agreement and First Amended Agreement will be considered, or will constitute, a waiver of any other provision, and no waiver will constitute a continuing waiver. No waiver will be binding unless executed in writing by the party making the waiver.

First Amendment-1

**IN WITNESS WHEREOF**, the Parties to this First Amendment, incorporated into the Agreement as the First Amended Agreement, have duly executed it on the day and year first above written.

**FUND**                                **THE GENERAL INNOVATION FUND**

By _____
    Dr. Dorne Sowerby, Agent

**ESCROW AGENT**                        **DR. DORNE SOWERBY**

By _____
    Dr. Dorne Sowerby

**COMPANY**                             **PATENTBOOKS, INC.**

By: _____
     Arthur M. Nutter, Chairman & CEO

# Exhibit 3

## AARON ETRA, ESQ. PAYMASTER – CITIBANK, N.A.- ATTORNEY IOLA ACCOUNT

| TRANSACTION PAYMASTER – Banking Account Information & Coordinates | |
| --- | --- |
| **PAYMASTER NAME AND ADDRESS** | Aaron Etra, Esq.<br>445 Park Avenue – 9th floor, New York, NY 10022 |
| **PASSPORT NUMBER** | 438120805  USA |
| **PAYMASTER TELEPHONE/FAX** | +1(917) 856-3500 |
| **PAYMASTER E-MAIL ADDRESS** | aaron@etra.com |
| **BANK NAME** | Citibank, N.A. |
| **BANK ADDRESS** | 734 Third Avenue, New York, NY 10017 |
| **BANK OFFICER** | Alexander Ursino |
| **BANK OFFICER TELEPHONE** | +1-212-682-1188 |
| **BANK OFFICER E-MAIL ADDRESS** | alexander.ursino@citi.com |
| **SWIFT CODE** | CITIUS33 |
| | |
| **ABA BANK ROUTING CODE** | 021000089 |
| **ACCOUNT NAME** | Aaron Etra, Esq. IOLA Account |
| **ACCOUNT HOLDER'S ADDRESS** | 445 Park Avenue- 9th floor, New York, NY 10022 |
| **ACCOUNT HOLDER'S TELEPHONE** | +1(917) 856-3500 |
| **ACCOUNT NUMBER** | 6781398687 |
| **CURRENCY** | **TO BE PAID IN USD  PER INSTRUCTIONS** |
| **SPECIAL INSTRUCTIONS** | **WIRE TRANSFERS:** All Wire transfers shall incorporate below Text Message and pre-advised via email to aaron@etra.com , with a copy of Bank Wire Transfer Slip e-mailed to aaron@etra.com  for legal verification and required documentation pursuant to mandated Patriot Act/Banking Regulations with one (1) original contract copy to be filed with Participating Banks. |
| **REQUIRED INSTRUCTIONS** | **All transfers of FUNDS shall state:**<br><br>1) **ORIGIN:** "FUNDS ARE CLEAN & CLEAR, OF NON-CRIMINAL ORIGIN AND ARE PAYABLE IN CASH IMMEDIATELY UPON RECEIPT BY BENEFICIARY'S BANK."<br><br>2) **CONTRACTUALLY EARNED FEES:** "THE CLEAN, CLEARED, LIEN FREE & UNENCUMBERED FUNDS, EARNED AS FINANCIAL CONSULTING FEES ON COMMERCIAL ENTERPRISES OF NON-CRIMINAL AND NON- TERRORIST ORIGINS, KNOWN BY BUYER AND/OR SELLER."<br><br>3) **PAYMENT GUARANTEE:** "FUNDS ARE CONTRACTUALLY GUARANTEED FOR PAYMENT THROUGH THE MASTER PAYMASTER ACCOUNT, AS LISTED HEREIN."<br><br>4) **SETTLEMENT:** "FUNDS ARE FOR SAME DAY PAYMENT, FULL CREDIT AND IMMEDIATE SETTLEMENT WITHOUT INTERRUPTION, DELAYS, OR PROTEST." |
| **FOR THE BENEFIT OF:** | Byerley Group for GIF |
| **PAYMASTER'S SIGNATURE** | |

# Exhibit 4

# Glaser Weil

10250 Constellation Blvd.
19th Floor
Los Angeles, CA 90067
310.553.3000 TEL
310.556.2920 FAX

Lawrence M. Hadley

**Direct Dial**
310.282.6235
**Direct Fax**
310.785.3535
**Email**
lhadley@glaserweil.com

January 31, 2019

VIA E-MAIL

Mr. Nigel Worth
26 Queens Road
Accrington, Lancashire, BB5 6AW

Dr. Dorne Sowerby
London

Re:     **PatentBooks, Inc.**

Dear Dr. Sowerby and Mr. Worth:

I write on behalf of PatentBooks, Inc., and Art Nutter.

As you know, in early 2018 PatentBooks entered into an agreement with you whereby PatentBooks deposited approximately $330,000 USD in a United States escrow account managed by Aaron Etra, and another €150,000 into a European escrow account.  The funds were expressly placed in these accounts to demonstrate financial solvency so that your company, GIF, could secure venture capital funds for a substantial investment in PatentBooks. The investment, you assured PatentBooks, would be make within weeks, and would include the approximately $500,000 in the escrow accounts.  In this regard, the funds could not be used for any other purpose and were not to be removed without prior written consent from PatentBooks. Likewise, the trustees could not be changed without PatentBooks' written approval.

Since that time, there has been no visible progress.  Worse yet, the reasons for the delay have changed over time—which has now caused PatentBooks' Board to suspect foul play.  To demonstrate good faith, PatentBooks has repeatedly demanded a demonstration from third party sources that (1) the escrow funds remain secured in a legitimate account and are liquid and available as contractually required, and (2) progress is being made toward securing the capital funds for investment in PatentBooks.  Despite many promises, these reasonable demands have been unfulfilled.  See e.g., the attached email correspondence.

Accordingly, PatentBooks hereby terminates and rescinds all agreements with GIF, effective 13 February 2019, and demands that all escrow deposits placed by PatentBooks ($500,000 USD) be returned on or before 13 February 2019.  If the deposits are not returned by that date, PatentBooks will take all appropriate legal

Dr. Dorne Sowerby
Mr. Nigel Worth
January 31, 2019
Page 2

action, and refer you and the escrow agents to the appropriate law enforcement authorities.

I understand that a meeting has been arranged between you and Mr. Nutter on 13 February 2019 in London.  PatentBooks Board of Directors will be available by phone that day to consider any good faith demonstration by you of items (1) and (2) above, provided that GIF both returns all escrow funds and makes an initial $3 million USD investment in PatentBooks prior to 13 February 2019.  In the event both conditions are satisfied, PatentBooks' Board will consider giving Mr. Nutter the authority to withdraw this letter.  Absent the express, written withdrawal of this letter, the termination and recessions stated above shall become effective at the close of business 13 February 2019, 5:00 p.m. MDT.

Sincerely,

*/s/Lawrence Hadley*

LAWRENCE M. HADLEY
of GLASER WEIL FINK HOWARD AVCHEN & SHAPIRO LLP

LMH
Enclosure

1587379.1



Attachments


**From:** NIGEL WORTH <nigel.worth1@btinternet.com>
**Sent:** Wednesday, December 05, 2018 2:03 PM
**To:** mark cianciolo <cianciolomark@gmail.com>; Art Nutter <art.nutter@patentbooksinc.com>; aaron@etra.com; Dr Dorne Sowerby <dornesowerby@gmail.com>; Robert Petrelli <robert.petrelli@patentbooksinc.com>
**Subject:** Re: New PBI POC for GIF


Dear Mr.Petrelli,
Thank-you for the instant message and its email trail with Mr.Etra who has no *locus standi* to respond further, though I assure that the matters you raised will have our soonest attention.
I will be out of office tomorrow but return Friday if you might bear with us.
Kind Regards,

*Nigel,*

*Innovation Support Services Limited,*

*0044(0)1254 351799,*

*Skype@nigel worth*


On Wednesday, 5 December 2018, 14:24:45 GMT, Robert Petrelli <robert.petrelli@patentbooksinc.com> wrote:


Dear Ms. Sowerby and Mr. Worth,


Per the e-mail below, Mr. Art Nutter has asked Mr. Cianciolo, and I to now manage, on behalf of PatentBooks, its relationship with you.



We are more than disappointed regarding yet another failure by you to meet your agreed-to obligations.  This failure, along with Mr. Aaron Etra's correspondence (see attached) and his lack of action leaves us more than unsettled.

We again ask you for a full accounting of our funds.  Absent a copy of last month's bank statement; we demand a full refund of our $500,000 plus accrued interest no later than December 7, 2018.

Bob Petrelli                    Mark Cianciolo

908.227.9505                720.979.1527

---------

Hi Aaron,

Bob is COO of PatentBooks Inc. I asked him to help by checking on the balance, because I was acting on behalf of PatentBooks Inc. as its CEO. Bob has my authorization.

Please provide the desired information.

Thanks,

Art Nutter
Chairman and CEO

Office: +1.719.325.5001

Main: +1.719.325.5000

Mobile: +1.719.339.8319

Skype: Artboard

PatentBooks Inc.
4308 Ridgelane Drive



Colorado Springs, Colorado 80918 USA
www.patentbooksinc.com


http://www.calbizjournal.com/art-nutter/


https://globalautoindustry.com/avoiding-global-patent-wars-in-autonomous-and-connected-vehicles-with-patentbooks/

The information contained in this e-mail message may be privileged, confidential and protected from disclosure.  If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at  art@patentbooksinc.com.

On Nov 19, 2018, at 12:13 PM, Aaron Etra <aaron@etra.com> wrote:


Hi Bob,

No intention to be other than helpful.

As conveyed to you, I have not had the pleasure of contact with you until your recent correspondence.  My introduction to this matter and correspondence on it was with Peter Hilton and Dr. Dorne Sowerby, with communication from Mr. Nutter when he sent the funds. For that reason, my suggestion is that you be in touch with those parties who provided direction to me.

With thanks and best regards,

Aaron

-----Original Message-----
From: Robert Petrelli [mailto:robert.petrelli@patentbooksinc.com]
Sent: Monday, November 19, 2018 11:45 AM
To: Aaron Etra
Cc: Art Nutter
Subject: RE: PatentBooks Escrow Account

Hi Aaron,

I have not received a reply to my email from two weeks ago.

As a fellow Columbia graduate, and as a member of the NY Bar, you should be intimately aware of RULE 1.15:

        PRESERVING IDENTITY OF FUNDS AND PROPERTY OF OTHERS; FIDUCIARY RESPONSIBILITY; COMMINGLING AND   MISAPPROPRIATION OF CLIENT FUNDS OR PROPERTY; MAINTENANCE OF BANK ACCOUNTS; RECORD KEEPING; EXAMINATION OF



RECORDS

As such, these funds must be maintained in your name, or in the name of a firm of lawyers of which you are a member.  Since I do not see that you are a member of a lawfirm, I must assume that the account is in your name.

I specifically draw your attention to Section C of Rule 1.15:

      A lawyer shall:
            (1) promptly notify a client or third person of the receipt of funds,
              securities, or other properties in which the client or third person has an interest;
            (2) identify and label securities and properties of a client or third person
              promptly upon receipt and place them in a safe deposit box or other place of
              safekeeping as soon as practicable;
            (3) maintain complete records of all funds, securities, and other
              properties of a client or third person coming into the possession of the lawyer and
              render appropriate accounts to the client or third person regarding them; and
            (4) promptly pay or deliver to the client or third person as requested by
              the client or third person the funds, securities, or other properties in the possession
              of the lawyer that the client or third person is entitled to receive.

So I yet again request: Please fulfill you fiduciary responsibilities and provide a copy of the most recent bank statement showing the funds.

Bob

-----Original Message-----
From: Robert Petrelli
Sent: Tuesday, November 06, 2018 2:02 PM
To: 'Aaron Etra' <aaron@etra.com>
Cc: Art Nutter <art.nutter@patentbooksinc.com>
Subject: RE: PatentBooks Escrow Account

Hi Aaron,

Thank you for your e-mail.  While Peter Hilton may be related to the GIF, he is upstream from our Escrow account and not a party to it.

Hence, we iterate, we wish to see a full accounting of the account.  So please provide a copy of the most recent bank statement showing the funds. Since we have not been contacted, at all, about any disbursement of funds, the funds should be there in full.

All the best,
Bob



-----Original Message-----
From: Aaron Etra <aaron@etra.com>
Sent: Tuesday, November 06, 2018 1:42 AM
To: Robert Petrelli <robert.petrelli@patentbooksinc.com>
Subject: RE: PatentBooks Escrow Account

Bob,

I was referring to Peter Hilton.

Best,

Aaron

-----Original Message-----
From: Robert Petrelli [mailto:robert.petrelli@patentbooksinc.com]
Sent: Monday, November 5, 2018 4:06 PM
To: Aaron Etra
Subject: RE: PatentBooks Escrow Account

Aaron,

I await your reply.

Bob

-----Original Message-----
From: Robert Petrelli
Sent: Friday, November 02, 2018 5:13 PM
To: Aaron Etra <aaron@etra.com>
Subject: Re: PatentBooks Escrow Account

Hi Aaron,

Thank you for your reply.

Who would that be?  Are you referring to Art Nutter?

Thank you.

Bob

On Nov 2, 2018, at 4:43 PM, Aaron Etra <aaron@etra.com> wrote:

Hello Robert,

Thank you  for this message.

Please be good enough to convey your request via the person with whom
you we have dealt on this matter.

With thanks and best regards,



Aaron Etra, Esq.

-----Original Message-----
From: Robert Petrelli [mailto:robert.petrelli@patentbooksinc.com]
Sent: Friday, November 2, 2018 4:29 PM
To: aaron@etra.com
Subject: PatentBooks Escrow Account

Hi Mr. Etra,

My name is Robert Petrelli.  I am the COO of PatentBooks Inc.

Art Nutter has asked be to obtain a copy of our escrow balance.

Can you please forward to me a copy of the latest bank statement?

Thank you
Robert Petrelli
COO
PatentBooks Inc
9082279505

---------- Forwarded message ---------
From: **Art Nutter** <art.nutter@patentbooksinc.com>
Date: Mon, Dec 3, 2018 at 11:01 PM
Subject: New PBI POC for GIF
To: Dorne Sowerby <dornesowerby@gmail.com>, Nigel Worth <nigel.worth1@btinternet.com>, Robert
Petrelli <robert.petrelli@patentbooksinc.com>, mark cianciolo <cianciolomark@gmail.com>

Dear Dorne and Nigel,

Due to GIF's inability to perform on the most recent 11.30.18 commitment, per Dorne's 11.7.18 phone call
with me and Nigel's 11.8.18 meeting with both Roya and me, and increased customer demands for my
time in the first 3 PatentBooks, and alternative investors, I have delegated responsibility for the prompt
consummation of the GIF investment, or potential recovery of PBI's investment into the escrow account
for the GIF, to Bob Petrelli and Mark Ciancolo, acting COO and CFO of PatentBooks Inc., addressed
above.



Aaron Etra awaits instruction from Dorne or Peter Hilton regarding release of information to PBI re the escrow account balance and transactions.

Please provide Bob and Mark the support and information you would provide me to resolve this matter.

Thanks,

Art Nutter
Chairman and CEO

Office: +1.719.325.5001

Main: +1.719.325.5000

Mobile: +1.719.339.8319

Skype: Artboard

PatentBooks Inc.
4308 Ridgelane Drive

Colorado Springs, Colorado 80918 USA
www.patentbooksinc.com

http://www.calbizjournal.com/art-nutter/

https://globalautoindustry.com/avoiding-global-patent-wars-in-autonomous-and-connected-vehicles-with-patentbooks/

The information contained in this e-mail message may be privileged, confidential and protected from disclosure.  If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender at  art@patentbooksinc.com.

